## CHAMBERLAIN *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE COUNTY

[No. 188, October Term, 1956.]

(Two Appeals In One Record)

*Decided per curiam January 11, 1957.*

*Opinion filed February 14, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Walter G. Finch* and *William E. Chamberlain,* for appellant.

*Wylie L. Ritchey,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

These two appeals in one record are from the action of the Circuit Court for Baltimore County in dismissing two petitions for a writ of mandamus to require the Board of Supervisors of Elections of Baltimore County to place the petitioner's name upon the ballot as a candidate for election to the County Council in the election to be held on January 23, 1957. The appeal was advanced for argument in this Court and we affirmed the action of the trial court in a per curiam opinion filed January 11, 1957. We now state briefly the reasons therefor.

A special election for the first County Council under the new Home Rule Charter for Baltimore County was directed to be held on January 23, 1957. In Section 1103 of the Charter it was provided that nominations of candidates be submitted not later than December 17, 1956, and that "such nominations may be made by: (1) petitions conforming with the requirements provided in Article 33, Section 44 of the Annotated Code of Maryland (1951 Edition) * * *." The section referred to provides, in part, that where a candidate is nominated by petition for a local election of the character here considered, it shall contain the signatures of at least five hundred voters residing in the political division in question, who intend to vote for the candidate, and that "Each signer shall append to his signature his residence, occupation, the precinct or district where he is registered as a voter, and his place of business * * *." It provides, further, that "Every such paper shall be accompanied by an

affidavit or affidavits made before a justice of the peace, notary public or other officer authorized to take oaths under the laws of this State, by one or more persons known personally to the justice, notary public or other officer, and so certified by him and signed by the affiants to the effect that the signers are known to such affiant or affiants to be registered voters of the district or precinct as set forth in said petition, and that the said affiant or affiants personally saw the signers, in regard to whom he or they make oaths, sign such paper. * * *"

It is conceded that the petitioner filed with the Board of Supervisors, at about 10:00 P. M. on the night of December 17, 1956, petitions containing the names and post office addresses of more than five hundred persons purporting to be voters of Baltimore County, who declared their intention to vote for him. No affidavits were filed until December 19, 1956, at which time the petitioner filed fourteen affidavits alleging that each affiant saw a specified number of persons sign said petitions, but without designating the particular persons observed. The notaries public before whom these various affiants appeared did not in any case certify that the affiants were personally known to the notaries.

The petitioner was promptly advised by the Chief Clerk of the Board of Supervisors that his petitions were not in proper form, and was subsequently officially informed that the Board rejected them. He filed his first mandamus proceeding on December 31, 1956. After a hearing on January 4, 1957, and the passage of an order dismissing the petition, he filed on January 7, 1957, a new petition for mandamus to which he attached fifteen additional affidavits designating the persons whom the affiants saw sign the original petition filed with the Supervisors. On the same day the trial court dismissed this petition for mandamus.

The petitioner contends that there was substantial compliance with the statute, and that the trial court erred in dismissing the petitions for mandamus. We think, however, there was not a substantial compliance. The Maryland cases recognize that where the election statutes fix a date for filing petitions or certificates of candidacy, such documents must

be filed before the expiration of the time fixed, and that the election officials may not exercise any discretion in the matter. *Graham v. Wellington,* 121 Md. 656; *Vaughan v. Boone,* 191 Md. 515, and cases cited. It has also been recognized in these cases that the fixing of a deadline is not an unreasonable or unconstitutional restriction, in view of the necessity of making timely preparations for the election. In the instant case we regard the provision that affidavits "accompany" the petitions as a clear indication of the legislative intent that these are an integral part of the petitions, and that they must likewise be filed before the deadline. The case of *State ex rel. Harry v. Ice,* 191 N. E. 155 (Ind.), relied on by the appellant as justifying a late filing, is distinguishable. In that case the validity of the nominating petition was not challenged until after the election, and the court simply held that the fact that the supporting affidavits were filed too late, although accepted by the election officials, could not be relied on to vitiate the election under the circumstances. The court intimated that even clearly mandatory provisions may be treated as directory after an election has been held. Cf. *Munsell v. Hennegan,* 182 Md. 15, 27. It might also be suggested that the case was moot. Cf. *Lloyd v. Supervisors of Elections,* 206 Md. 36, and cases cited.

We have held that at least some of the statutory provisions, such as those requiring a statement of the business addresses and occupations of the signers, are directory and not mandatory. *Soper v. Jones,* 171 Md. 643, 647. But it was pointed out that these statements "are not the sole reliance for assurance of the qualifications of the signers, for affidavits that they are voters in the district are to be furnished." The language quoted emphasizes the importance of the affidavits in the statutory scheme. We indicated in *Munsell v. Hennegan, supra,* that provisions deemed essential to a fair election, by preventing fraudulent nominations, would not be construed as directory. Nor is the appellant aided by the holding in *Tawney v. Supervisors of Elections,* 198 Md. 120, that the Supervisors of Elections cannot properly reject a certificate of nomination, in proper form, merely because the Board could not identify some of the signers. In

the instant case the affidavits were not filed until after the time fixed by the Charter, and hence the petitions were not in proper form. We hold that the Supervisors of Elections properly rejected the petitions under the circumstances. In view of our decision on this point, it is unnecessary to consider the other points raised by the appellees, that all the affidavits failed to state that the affiants were personally known to the notaries public, and that, at least in the first affidavits, there was no statement that the affiants personally saw the signers sign the petitions.